UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHELSEA HORVATH,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:23-cv-1310

Hon. Ray Kent

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplemental security income (SSI).

On January 28, 2021, plaintiff protectively filed an application for SSI, alleging disability beginning on May 20, 2013.  PageID.35.  Plaintiff identified her disabling conditions as cyclic vomiting syndrome ("CVS"), Crohn's Disease, bi-polar disorder, borderline personality disorder, anxiety, depression, and bowel resection.  PageID.235.  Prior to applying for SSI, plaintiff completed the 11th grade.  PageID.236.  Plaintiff has no past relevant work. PageID.43.  An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on November 23, 2022.  PageID.35-45.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

I.      LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of January 28, 2021. PageID.37. At the second step, the ALJ found that plaintiff had severe impairments of Crohn's disease, CVS, obesity, bipolar disorder, generalized anxiety disorder, and borderline personality disorder. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can never climb ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She cannot work at unprotected heights or with moving mechanical parts. She must have access to restroom facilities. She can carry out simple and routine tasks. She can have no interaction with the public. She can occasionally work with coworkers and supervisors with no team or tandem tasks. She can operate in a low-stress environment defined as occasionally making work-related decisions and occasionally dealing with changes in the workplace.

PageID.39. The ALJ also found that plaintiff has no past relevant work. PageID.43.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.44-45. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as custodian (620,000

4

jobs), office clerk (104,000 jobs), and dishwasher (140,000 jobs). PageID.44-45. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 28, 2021 (the date she filed the application) through November 23, 2022 (the date of the decision). PageID.45.

### III. DISCUSSION

Plaintiff contends that the decision was not supported by substantial evidence and raises three errors on appeal.[1]

> **A. The ALJ violated 20 C.F.R. § 404.1520c during the evaluation of the evidence because he failed to properly consider the mandatory factors of supportability and consistency.** [2]

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Rather, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency". 20 C.F.R. § 416.920c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and

---

[1] The Court notes that plaintiff addresses all three errors in a single narrative.

[2] The Court notes that plaintiff refers to 20 C.F.R. § 404.1520c. However, the appropriate regulation is 20 C.F.R. § 416.920c. *See* PageID.39 ("I also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.").

5

supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

At the time of her administrative hearing on July 19, 2022, plaintiff was 24 years old and had no employment history.  PageID.228-223, 236-237. During the hearing, plaintiff described her symptoms from Crohn's disease and CVS.  Crohn's disease symptoms include abdominal pain, frequent bowel movements, and occasionally painful bowel movements. PageID.69.  CVS symptoms include "nausea vomiting incidences" which occur "[a]nywhere from three to four times a day for three to four days."  PageID.67.  With respect to working, plaintiff testified that "even if I had to sit on a computer if I'm nausea [sic] and vomiting, like, I don't feel that I would be able [to do the job]."  PageID.65.

The ALJ summarized plaintiff's medical history with respect to Crohn's disease and CVS:

> Consistent with hearing testimony, the evidence of record revealed a medical history significant for cyclic vomiting syndrome and Crohn's disease dating back to at least adolescence with a right colectomy and resection in December 2018 (Exhibit 2F/118, 126-130, 315, 330). However, the alleged chronicity and severity of symptoms is not wholly consistent with other evidence as a whole. For example, despite testimony of continued abdominal pain with occasional painful bowel movements, follow-ups revealed that from a Crohn's disease standpoint, with weekly Humira, the claimant did well clinically with good control of symptoms during the period at issue.  Further clinical workup showed no postoperative recurrence of bowel inflammation or obstruction (Exhibit 2F/9; 4F/8; 5F/1; 6F/17, 22; 8F/3-4).

>        Moreover, while complaints of nausea and vomiting persisted through the relevant time, the claimant declined to follow recommended treatment. During a May 2021 gastroenterology follow-up, the claimant endorsed recurrence of nausea and vomiting in 2020 after a couple of years of remission. She disclosed using a cannabinoid product, which she felt strongly did not drive her vomiting problem (Exhibit 4F/8). However, treating gastroenterologist, Lia Kaufman, M.D., advised the claimant to stop using cannabinoid (Exhibit 4F/8). Despite that medical recommendation, the claimant continued to use a form of cannabis as she disclosed vaping the drug during a July 2021 emergency room visit for cyclical vomiting. The claimant noted that she was aware that such drug use could cause cyclical vomiting syndrome, but that she never tried stopping to see if that would help her symptoms (Exhibit 6F/17). The emergency room physician, Jeremy Gentile, D.O., advised that she could develop cannabis hyperemesis on top of cyclic vomiting at any time and that stopping her cannabis use may improve symptoms (Exhibit 6F/23). Similarly, during a November 2021 follow-up with Dr. Kaufman, the claimant declined to stop using cannabis, but as before, the gastroenterologist advised stopping (Exhibit 8F/3-4).
>
>        The continued cannabis use in spite of repeated medical recommendations to stop and see if symptoms would abate suggests that symptoms have not been of the frequency and severity alleged. . .

PageID.40-41. Thus, a significant issue in this case is plaintiff's failure to follow medical recommendations to stop cannabis use and vaping.[3] *See* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 at *9 (Oct. 25, 2017) ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). *See, e.g.*, *Knapp v.*

---

[3] The record reflects that on May 6, 2021, plaintiff reported a recurrence of nausea and vomiting. PageID.1467. Her gastroenterologist, Dr. Kaufman stated: "Reviewed that [plaintiff] is currently using a cannabinoid product, but she feels very strongly that this is not driving her vomiting problem. Reviewed importance of being honest with providers going forward." *Id*. Plaintiff's treatment plan included, "Please stop cannabinoid use and vaping." *Id*.

Plaintiff reported to a hospital emergency room on July 3, 2021 with a diagnosis of CVS. PageID.1502. Hospital records state in part: "Patient denied any smoking history but reported that she regularly vapes nicotine and THC. Patient is aware that THC vaping can cause cyclical vomiting syndrome but never tried stopping it to see if that would help with her symptoms. Patient's mother at bedside is aware of patient's THC use, but is trying to figure out the exact cause for patient's symptoms including virtual visit at University of Michigan next month." PageID.1506.

At a follow-up visit on November 4, 2021, Dr. Kaufman noted that plaintiff saw a motility specialist "with recommendations to stop using cannabis and to consider continuous birth control to help manage CVS symptoms - - she is not interested in either at this time." *Id*. Dr. Kaufman again recommended, "Please stop cannabinoid use and vaping." *Id*.

*Commissioner of Social Security*, No. 22-2055, 2023 WL 6800153 at *3 (6th Cir. Oct. 16, 2023) ("[Claimant's] healthcare providers consistently advised [claimant] that her cigarette smoking contributed to her condition and that quitting would improve her symptoms. The ALJ therefore reasonably relied on [claimant's] failure or refusal to stop smoking in discounting her claim of total disability.").

In an attempt to sort out plaintiff's medical condition, the ALJ scheduled post-hearing evaluations advising plaintiff in part,

> [Y]our case is very both unique and complicated at the same time, so what I'm going to do to help me to understand the best possible manner I'm going to set up a couple of appointments for you with Social Security doctors, okay? One of them will be more of a physical medicine doctor that will talk to you more about the Crohn's disease and the vomiting syndrome.

PageID.93.

PA-C Deters performed the examination and prepared a brief narrative which characterized the Crohn's disease as "causing moderate debility with diarrheal symptoms" and the CVS as "causing mild debility". PageID.1696. In a "Medical source statement of ability to do work-related activities (Physical)", Deters stated that plaintiff's ability to sit, stand, and walk are restricted due to "using restroom" and "throwing up". PageID.1698. Specifically, plaintiff could sit 2 hours, stand 2 hours, and walk 2 hours at "one time without interruption", and could sit 3 hours, stand 1 hour, and walk 1 hour during an 8-hour work day. *Id*.

The ALJ's decision addressed the medical opinions as follows:

> Upon initial review in May 2021, State agency medical consultant, Thomas Chiambretti, M.D., opined a capacity for light work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 of 8 hours, and sitting 6 of 8 hours with normal breaks. Dr. Chiambretti further opined that the claimant could frequently climb ramps/stairs, stoop, kneel, and crouch, and occasionally climb ladders/ropes/scaffolds and crawl (Exhibit 1A). Upon reconsideration in December 2021, State agency medical consultant, Jennie Rose, M.D., concurred with Dr. Chiambretti's initial determination and opined no further

>    restriction (Exhibit 3A). I find their prior administrative medical findings are persuasive as they are supported by a review of the relevant evidence of record and are overall consistent with the claimant's medical history of Crohn's disease with prior resection and cyclical vomiting syndrome (Exhibit 2F; 4F; 8F). However, in considering hearing testimony and viewing the record most favorably to the claimant, I find somewhat greater postural limits and the additional environmental limits with inclusion of restroom access warranted.
>
>    Following the prior administrative medical findings, in September 2022, consultative examiner, Meghan Deters, PA-C, opined that the claimant can lift and carry up to 20 pounds occasionally, sit for 3 hours total in an 8-hour workday, stand for 1 hour total in an 8-hour workday, and walk for 1 hour total in an 8-hour workday. The examiner also opined that the claimant can frequently climb ramps and stairs, occasionally climb ladders or scaffolds, and occasionally stoop, kneel, crouch, and crawl. The examiner indicated that the claimant can never balance. The examiner additionally indicated that operation of foot controls, pushing/pulling, reaching, handling, fingering, and feeling are limited to occasional. As to environment, the examiner indicated no exposure to unprotected heights, humidity/wetness, respiratory irritants, and temperature extremes and occasional exposure to moving mechanical parts and vibrations. The examiner indicated that the claimant can work in a moderate noise level (Exhibit 12F).
>
>    Although the examiner evaluated the claimant firsthand, except for the light lifting and carrying, overall postural activities, and no exposure to unprotected heights, I find this medical opinion is unpersuasive as it is not supported by the examiner's own report.  Rather, consultative examiner's report indicated that cyclical vomiting syndrome is mild severity and Crohn's disease is of moderated severity. The PA-C indicated that on exam the claimant appeared able to sit, stand, bend, stoop, push, pull, and carry among other noted activities without apparent deficits (Exhibit 12F/6). This presents a significant internal inconsistency. Moreover, the PA-C provided sparse explanation to support the otherwise significant restriction opined. There was brief mention of Crohn's disease with diarrhea and cyclic vomiting with restroom use (Exhibit 12F/7-12). Further, the opined severity is not consistent with the totality of evidence. As noted above, Crohn's disease has been well controlled during the period at issue (Exhibit 2F/9; 4F/8; 5F/1; 6F/17, 22; 8F/3-4).  Also, medical records and the consultative exam did not show signs of diminished manipulative activities nor evidence to support or that is consistent with the need for the environmental limits indicated and reduced exposure to noise (Exhibit 4F; 8F; 12F).

PageID.42-43.

The ALJ did not err in evaluating PA-C Deter's medical source statement.  While the stated purpose of the evaluation was to evaluate the Crohn's disease and CVS, PA-C Deter's

9

narrative did not address the condition in any detail. In addition, the significant limitations in sitting, walking and standing were not consistent with the characterization of the CVS as causing "mild debility" and Crohn's disease as causing "moderate debility". Accordingly, plaintiff's claim of error is denied.

> **B. The ALJ committed reversible error by concluding that plaintiff's minimal daily living activities supported a finding that she was not disabled.**

An ALJ properly considers a claimant's daily activities as one factor in determining the residual functional capacity. *See* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to your symptoms such as pain, which we will consider include: (i) Your daily activities"). *See, e.g., Shepard v. Commissioner of Social Security*, 705 Fed. Appx. 435, 441-42 (6th Cir. 2017) ("It was entirely appropriate for the ALJ to consider whether [the claimant's] asserted limitations were consistent with her ability to drive, prepare simple meals, shop, and go to eat or the movies."); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability).

Here, the ALJ addressed plaintiff's daily activities as follows:

> Of note, however, the claimant's testimony that she is unable to go out alone is not consistent with her earlier report made shortly after filing her Title XVI claim (Exhibit 5E). In her February 2021 report, the claimant disclosed that she did go out alone and that she did not need anyone to accompany her (Exhibit 5E/4-5). Moreover, mental health records did not reveal subsequent signs of mental decline such that she could no longer go out alone. Rather, to the contrary, as noted above, in June 2022, mental health conditions were "well controlled" (Exhibit 9F/42). Additionally, the claimant indicated that she did not handle stress or changes in routine well, but she has been able to be the primary caregiver to her young child. The claimant further disclosed that she has been able to regularly prepare meals, handle her own money, and do household chores (Exhibit 5E; Hearing testimony). Thus, I find the above mental restriction to simple, routine tasks in a low-stress environment with no public interaction and no more than occasional work with coworkers and supervisors as set forth above warranted.

PageID.41-42.

The record reflects that plaintiff made various statements regarding her daily activities. On a "worst-case-scenario day" plaintiff testified that, "I can't do anything. I can't get up." PageID.69. On a day when she is having "a little bit of a Crohn's bout" and "feeling a little [nauseous]", plaintiff testified that she can engaged in activities such as "play in the yard [with her son], play on the floor, stuff like that" as well as make meals, and go to a store with a friend or go to her mother's for dinner. PageID.70-71.

It is the ALJ's function to resolve conflicts in the evidence. *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987). That is what the ALJ did in this case when he addressed plaintiff's daily activities. Based on this record, the ALJ included limitations to accommodate plaintiff's conditions (*e.g.*, she must have access to restroom facilities, carry out only simple and routine tasks, have no interaction with the public, occasionally work with coworkers and supervisors, and operate in a low-stress environment). Accordingly, plaintiff's claim of error is denied.

### C. The ALJ committed reversible error because he failed to properly consider the third-party testimony.

The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work. 20 C.F.R. § 416.913(d). These "other" sources include non-medical sources such as spouses, parents and other care givers, siblings, other relatives, friends, neighbors and clergy. 20 C.F.R. § 416.913(d)(4). Here, plaintiff's mother testified at the administrative hearing as a non-medical source.

"If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Commissioner of Social Security*, 480 Fed. Appx. 804, 810 (6th Cir. 2012). An ALJ must give perceptible weight to lay testimony when "it is fully supported by the reports of the treating

physicians." *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). *See Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004) ("[t]he testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians") (citing *Lashley*) (emphasis added). As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

The ALJ addressed the third-party testimony as follows:

> I additionally considered third-party statements from the claimant's mother, Ms. Horvath, who indicated much of the same severity the claimant alleged. At the hearing, Ms. Horvath noted a longstanding history of nausea and vomiting. She testified that during an episode of nausea and vomiting the claimant typically lied down. She testified that in one month there were 17 days of vomiting with chronic nausea (See also 10F; 11F). Ms. Horvath testified that the claimant relies on her regularly to help care for the claimant's son and other daily activities. Ms. Horvath provided a similar report of symptoms and functional impact in a 2021 report. She noted that the claimant did not go out alone due to anxiety (Exhibit 4E). I have accounted for the mother's testimony and report with the physical and mental limits set out above. Implications of greater severity, however, is not consistent with the overall evidence. Of note, despite the recorded frequency of vomiting and nausea in 2021, the claimant, nonetheless, did not comply with the medical recommendation to stop using cannabis to see if symptoms would lessen (Exhibit 10F; 11F; 4F/8; 6F/17; 8F/3-4). Notably, after November 2021, while she continued with other unrelated treatment, the claimant had no further follow-ups addressing cyclical vomiting syndrome (Exhibit 9F).

PageID.43.

Here, plaintiff has not met her burden. The ALJ considered Ms. Horvath's testimony regarding the frequency of plaintiff's nausea and vomiting (*e.g.*, 17 instances of nausea and vomiting in one month). However, the ALJ also considered plaintiff's failure to follow medical recommendations to stop using cannabis to see if those symptoms would lessen. Accordingly, plaintiff's claim of error is denied.

### III. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 31, 2025                             /s/ Ray Kent
                                                                       RAY KENT
                                                                       United States Magistrate Judge